# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
\* \* \*

| | |
|---|---|
| PAUL GARDNER,<br><br>                Plaintiff,<br><br>v.<br><br>NAPHCARE, INC., *et al.*,<br><br>                Defendants. | Case No. 3:24-CV-00277-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 8] |

This case involves a civil rights action filed by Plaintiff Paul Gardner ("Gardner") against several Defendants. Currently pending before the Court is Defendant Naphcare, Inc.'s ("Naphcare") motion to dismiss. (ECF No. 8.) Gardner responded, (ECF No. 13), and Naphcare replied. (ECF No. 14.) For the reasons stated below, the Court recommends that Naphcare's motion to dismiss, (ECF No. 8), be granted in part and denied in part.

**I.    BACKGROUND**

On June 30, 2024, Gardner initiated this action for events that occurred while he was an inmate in the custody of the Washoe County Detention Facility ("WCDF"). (ECF No. 1.) Gardner brings this action against defendants Naphcare, Michael Trebian ("Trebian"), Michael Tover ("Tover"), Michael Buehler ("Buehler"),[2] Frank Akpati ("Akpati"), Larry Williamson, M.D. ("Dr. Williamson"), and Washoe County ("County"). (*Id.* at ¶ 2-9.)

///

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    Gardner refers to Trebian, Tover, and Buehler collectively as "Nurse Michael Doe" as the true identity of the individual responsible for the conduct alleged in the complaint was allegedly withheld from Gardner. (ECF No. 1 at ¶ 6.)

Gardner's complaint alleges the following: On July 1, 2022, Gardner was an inmate at the WCDF. (*Id.* at ¶ 20.) Gardner wore scleral contact lenses. (*Id.* at ¶ 21.) NaphCare contracted with Washoe County to provide medical services to inmates at the WCDF. (*Id.* at ¶ 22.) NaphCare medical providers at the jail determined Gardner needed contact solution once per day in the evening for use with his scleral contact lenses. (*Id.* at ¶¶ 24, 26.) NaphCare medical providers ordered nursing staff (Nurse Michael Doe) to distribute Gardner's "nightly supply of solution for application of the special lenses as indicated in his chart." (*Id.* at ¶¶ 26-28.) Nurse Michael Doe administered hydrogen peroxide rather than saline solution. (*Id.* at ¶ 29.) The hydrogen peroxide was intended for another inmate. (*Id.* at ¶ 30.) Gardner applied the hydrogen peroxide to his contact lens resulting in injuries including burning, worsened vision problems, photophobia, headaches, dizziness, and frequent infections. (*Id.* at ¶¶ 33-38.)

Three days after the incident, Gardner was examined by a nurse in the infirmary. (*Id.* at ¶ 40.) Gardner claims NaphCare denied his request to provide him with an eyepatch and Washoe County denied him use of new scleral lenses. (*Id.* at ¶¶ 43-46.) Gardner made repeated requests for an eye examination. (*Id.* at ¶ 105.) On August 16, 2022, Frank Akpati, a nurse practitioner, noted in Gardner's chart that his pre-incident diagnosis was basically astigmatism. (*Id.* at ¶ 106.) Gardner contends Mr. Akpati's assessment was "essentially irrelevant." (*Id.* at ¶ 107.) However, Mr. Akpati's note caused Dr. Larry Williamson not to appreciate the severity of Gardner's medical need. (*Id.* at ¶ 109.)

Gardner saw Dr. Larry Williamson on January 7, 2023. (*Id.* at ¶¶ 48, 115-116.) Dr. Williamson was not aware of the hydrogen peroxide incident and was not a specialist in scleral lenses. (*Id.* at ¶¶ 49-50.) Dr. Williamson referred plaintiff to an optometrist who specializes in scleral contact lenses for an examination. (*Id.* at ¶¶ 49,117.) Six months later, Plaintiff was seen by a specialist. (*Id.* at ¶ 52.) Gardener claims the specialist indicated earlier treatment would have prevented his visual acuity from worsening. (*Id.* at ¶ 54.)

Based on these allegations, Gardner asserts five claims: (1) general negligence against Defendants Tover, Trebian, and Buehler (aka Nurse Michael Doe), Naphcare, and Does; (2) negligent hiring, training, supervision, and retention against Naphcare and Does; (3) professional negligence against Defendants Tover, Trebian, and Buehler (aka Nurse Michael Doe), Naphcare, and Does; (4) inadequate medical care and cruel and unusual punishment in violation of the Eighth Amendment and Article I Section 6 of the Nevada Constitution against Defendants County, Naphcare, and Does; and (5) disability discrimination in violation of Title II of the Americans with Disabilities Act ("ADA") against Defendants County and Naphcare. (*Id.*) Gardner seeks monetary relief. (*Id.* at 20.)

Defendant Naphcare filed the instant motion to dismiss arguing: (1) Gardner's claims sound in professional negligence and are therefore barred by the one-year limitation of NRS 41A.097(2); (2) the alleged facts do not support a *Monell* claim against Naphcare; (3) the complaint fails to state sufficient facts of deliberate indifference to serious medical needs against Dr. Williamson or Akpati; and (4) Naphcare, a private entity, is not subject to claims under the ADA. (ECF No. 8.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint challenged "by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but requires plaintiff to provide actual grounds for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Generally, a motion to dismiss pursuant to Rule 12(b)(6) tests the "legal sufficiency of the claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "view[ed] . . . in the light most favorable to the" nonmoving party. *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1087 (9th Cir. 2021).

///

The Ninth Circuit has found that two principles apply when deciding whether a complaint states a claim that can survive a 12(b)(6) motion. First, to be entitled to the presumption of truth, the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, "must plausibly suggest an entitlement to relief." *Id.* (emphasis added).

Dismissal is proper only where there is no cognizable legal theory or an "absence of sufficient facts alleged to support a cognizable legal theory." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (quoting *Navarro*, 250 F.3d at 732). Additionally, the court takes particular care when reviewing the pleadings of a *pro se* party, because a less stringent standard applies to litigants not represented by counsel. *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016).

## III.    DISCUSSION

Defendant Naphcare files the instant motion to dismiss arguing the complaint should be dismissed against Naphcare, and each of the other named medical providers and nurses[3], for failure to state a claim upon which relief may be granted. Naphcare argues that this action is premised on professional negligence and was commenced beyond the applicable one-year statute of limitations pursuant to NRS 41A.097. Further, Naphcare argues Gardner has failed to state facts sufficient to support a cause of action for municipality liability/deliberate indifference to serious medical needs. Finally,

---

[3]   The Court notes that Naphcare makes various arguments on behalf of the other named medical providers and nurses—i.e., Nurse Michael Doe, Dr. Williamson, and Akpati—however, none of these defendants has been served. Thus, the Court does not find it appropriate to hear argument from Defendant Naphcare on behalf of these unserved Defendants unless and until Defendant Naphcare's attorneys file a Notice of Appearance on behalf of such defendants. As such, the Court will only address the arguments in Naphcare's motion to dismiss that relate directly to Naphcare.

Naphcare argues that Title II of the ADA only applies to public entities, not private entities or individuals such as NaphCare or its employees. Thus, Naphcare argues the matter must be dismissed for a failure to state a claim upon which relief can be granted. (ECF No. 8.) The Court will discuss each argument in turn.

### A. General Negligence Claim

Naphcare first argues that Gardner's claims sound in professional negligence, as opposed to general negligence, and therefore Gardner's claim for general negligence should be dismissed. (ECF No. 8 at 10-12.) Gardner does not address or otherwise oppose this argument. (*See* ECF No. 13.) Under Nevada law, the sole inquiry as to whether a claim sounds in ordinary negligence or professional negligence (medical malpractice) is "whether the claim involves a provider of healthcare rendering services in a way that causes injury...." *Limprasert v. PAM Specialty Hosp. of Las Vegas LLC*, 140 Nev. Adv. Op. 45, 550 P.3d 825, 831 (2024). Based on Nevada law, and based on Gardner's apparent non-opposition, the Court recommends that Gardner's general negligence claim be dismissed.

### B. Professional Negligence and Negligent Hiring Claims

Next, Naphcare argues that Gardner's claims for Professional Negligence and for Negligent Hiring, Training, Supervision, and Retention are time-barred by the one-year statute of limitations provide by NRS 41A.097(2). (ECF No. 8 at 10-12.) While Gardner acknowledges that he did not timely file his complaint, he argues the statute of limitations should be tolled because Naphcare intentionally withheld Gardner's medical records from him, delaying his ability to discern the appropriate identity of the Naphcare employee who caused his injury. (ECF No. 13 at 2, 4-8; ECF No. 1 at ¶ 60.)

NRS 41A.097(2) governs the limitations periods for professional negligence claims, stating in relevant part that "an action for injury or death against a provider of health care may not be commenced more than 3 years after the date of the injury or 1 year after the plaintiff discovers or through use of reasonable diligence should have discovered the injury, whichever occurs first." Under Nevada law, claims for negligent

hiring, training, and supervision are subject to the requirements of NRS 41A when the underlying tortfeasor employee's negligence constitutes professional negligence. *Yafchak v. S. Las Vegas Med. Invs., LLC*, 519 P.3d 37, 40.

The accrual date for NRS 41A.097(2)'s one-year limitations period is generally a question of fact that must be decided by a jury; however, courts may determine the date as a matter of law when the evidence irrefutably shows the plaintiff was placed on inquiry notice of a potential claim. *Winn v. Sunrise Hosp. & Med. Ctr.*, 128 Nev. 246, 251-52, 277 P.3d 458, 462 (2012). "A plaintiff discovers [their] injury when [they] know[ ] or, through the use of reasonable diligence, should have known of facts that would put a reasonable person on inquiry notice of [their] cause of action." *Id.* at 252, 277 P.3d at 462 (quoting *Massey v. Litton*, 99 Nev. 723, 728, 669 P.2d 248, 252 (1983)) (internal citation omitted). "[T]hese facts need not pertain to precise legal theories the plaintiff may ultimately pursue, but merely to the plaintiff's general belief that someone's negligence may have caused his or her injury." *Winn*, 128 Nev. at 252-53, 277 P.3d at 462. "The discovery may be either actual or presumptive, but must be of both the fact of damage suffered and the realization that the cause was the health care provider's negligence." *Massey*, 99 Nev. at 727, 669 P.2d at 251.

Pursuant to NRS 41A.097(4), however, the "time limitation is tolled for any period during which the provider of health care has concealed any act, error or omission upon which the action is based and which is known or through the use of reasonable diligence should have been known to the provider of health care." Thus, a plaintiff seeking to toll subsection 2's one-year discovery period must show an intentional concealment and "establish that he or she satisfied subsection 2's standard of 'reasonable diligence.'" *Winn*, 128 Nev. at 255, 277 P.3d at 464. In short, to establish tolling based on concealment, Gardner must show that (1) the provider "intentionally withheld information," and (2) "that this withholding would have hindered a reasonably diligent plaintiff from procuring an expert affidavit." *Kushnir v. Eighth Jud. Dist. Ct.*, 137 Nev. 409, 410, 495 P.3d 137, 139 (Ct. App. 2021) (citing *Winn*, 128 Nev. at 225, 277 P.3d at 464).

6

Here, as Gardner concedes in his complaint and his response to the motion to dismiss, the very nature of his injury—a chemical burn to his eye—would have put a reasonable person on inquiry notice of his possible cause of action on the date the injury occurred—July 1, 2022. Gardner argues, however, that the statute of limitations should be tolled based on his allegations that Naphcare withheld his medical records until after his release from custody, which prevented him from properly identifying the Naphcare employee responsible for his injury. (ECF No. 13 at 2, 4-8.)

In order to toll the statute of limitations, Gardner must demonstrate that the alleged concealment would have hindered a reasonably diligent plaintiff from discovering their cause of action. However, Gardner's complaint and opposition to the motion to dismiss does not establish how the alleged concealment of his medical records hindered his ability to file a professional negligence action. Gardner's argument that he needed his medical records to identify the appropriate identity of the Naphcare employee who gave him hydrogen peroxide instead of saline solution, does not address that he was aware of the injury and/or cause of action for which he would file suit on the date he suffered his injury. *See Winn*, 128 Nev. at 252, 277 P.3d at 462; *See Kushnir*, 137 Nev. at 412-13, 495 P.3d at 141. Gardner merely argues the withheld medical records prevented him from identifying the proper defendants. However, ignorance of the defendant's identity will not delay accrual of a cause of action under the discovery rule if the plaintiff fails to use reasonable diligence in discovering the defendant's role. *Siragusa v. Brown*, 114 Nev. 1384, 1394, 971 P.2d 801, 807-08 (1998).

Thus, the Court finds that the statute of limitations began to run on the date Gardner was given the incorrect solution for his contact lenses on July 1, 2022 and because Gardner does not demonstrate that the allegedly withheld records "hindered a reasonably diligent plaintiff from procuring an expert affidavit," tolling is not warranted. *See Kushnir*, 137 Nev. at 410, 495 P.3d at 139. Accordingly, the Court recommends that the professional negligence and negligent hiring claims be dismissed as untimely.

///

### C. Inadequate Care and Cruel and Unusual Punishment – Municipal Liability Claim

Next, Naphcare argues that Gardner's municipal liability claim fails as the complaint does not allege a delay in medical care due to a policy or custom of Naphcare. (ECF No. 8 at 12-16.)

A municipality may be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). As explained by the Ninth Circuit, a litigant may recover from a municipality under § 1983 on one of three theories of municipal liability. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury." *Id.* (quoting *Monell*, 436 U.S. at 708 (Powell, J. concurring)). "Second, under certain circumstances, a local government may be held liable under § 1983 for acts of omission, when such omissions amount to the local government's own official policy." *Id.* "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342 1346-47 (9th Cir. 1992)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipalities are not vicariously liable under § 1983 for their employees' actions. *Id.* at 60.

Gardner's complaint specifically alleges that Naphcare's "policy or custom was to prohibit inmates from receiving medical equipment or modalities like new contact lens prescriptions and eye patches based on how severely their employees believed it was necessary, and/or due to apathy, and/or without considering objective factors that reasonable medical providers would consider." These allegations are sufficient to state a

colorable municipality liability claim against Naphcare. *See Monell*, 436 U.S. at 708 (a local government may be held liable when implementation of its official policies or established customs inflicts the constitutional injury.) Accordingly, Naphcare's motion to dismiss, should be denied with respect to the municipality liability claim.

### D.  Disability Discrimination in Violation of the ADA

As to the ADA claim, Naphcare argues that because Naphcare is a private entity, it is not subject to claims under the ADA and therefore the disability discrimination claim should be dismissed. (ECF No. 8 at 18-19.)

Title II of the ADA applies to prisons and incarcerated persons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998). The proper defendant in a Title II claim is the public entity responsible for the alleged discrimination. *United States v. Georgia*, 546 U.S. 151, 153-54 (2006). "The ADA broadly "defines 'public entity' as 'any State or local government [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir.1997) (quoting 42 U.S.C. § 12131(1)). Naphcare contracts with the County to provide medical services to inmates and is therefore an instrumentality of Washoe County and a public entity for purposes of the ADA. Accordingly, the Court recommends that Gardner's disability discrimination claim against Naphcare proceed.

### E.  Dismissal of Defendants Michael Buehler and Michael Tover

Finally, in response to the motion to dismiss, Gardner states he has confirmed the identity of "Nurse Michael Doe" as Michael Trebian and therefore agree to dismiss Defendants Michael Buehler and Michael Tover. (ECF No. 13 at 6, n. 3.) Accordingly, the Court recommends that Defendants Michael Buehler and Michael Tover be dismissed from this action.

## IV.  CONCLUSION

For the reasons stated above, the Court recommends that Naphcare's motion to dismiss, (ECF No. 8), be granted in part and denied in part.

///

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Naphcare's motion to dismiss, (ECF No. 8), be granted in part and denied in part, specifically that:

- The motion be granted, such that Gardner's claims for (1) General Negligence (First Cause of Action), (2) Negligent Hiring, Training, Supervision, and Retention (Second Cause of Action), and (3) Professional Negligence (Third Cause of Action) be **DISMISSED, WITH PREJUDICE**.
- The motion be denied, such that Gardner's claim for (1) municipality liability (Fourth Cause of Action), and (2) Disability Discrimination in violation of the ADA (Fifth Cause of Action), **PROCEED**.

**IT IS FURTHER RECOMMENDED** that Defendants Michael Buehler and Michael Tover be dismissed from this action.

**DATED**: October 4, 2024.

_____
**UNITED STATES MAGISTRATE JUDGE**