UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PAUL GARDNER,<br><br>    Plaintiff,<br><br>  v.<br><br>NAPHCARE, INC., *et al.*,<br><br>    Defendants. | Case No. 3:24-cv-00277-MMD-CLB<br><br>ORDER |

**I. SUMMARY**

Plaintiff Paul Gardner filed a complaint alleging that during his incarceration at Washoe County Detention Facility ("WCDF"), medical-provider Defendants'[1] violated his civil rights under the United States Constitution, the Nevada Constitution, and the Americans with Disabilities Act ("ADA"). (ECF No. 1 ("Complaint").) Gardner also brings general and professional negligence claims. (*Id.*) Defendant Naphcare, Inc. filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[2] (ECF No. 8 ("Motion").) Before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Carla L. Baldwin, recommending that the Motion be granted as to Gardner's negligence claims (claims one, two and three), and denied as to his constitutional and ADA claims (claims four and five). (ECF No. 21.) Objections to the R&R were due October 18, 2024. (*See id.*) To date, no objections to the R&R have been filed. For the reasons explained below, the Court will adopt the recommendations in the R&R with respect to the majority

---

[1]Defendants are Naphcare, Inc. ("Naphcare"), Michael Trebian, Michael Tover, Michael Behler, Frank Akpati, Dr. Larry Williamson, and Washoe County. (ECF No. 1.) Plaintiff refers to Trebian, Tover, and Buehler collectively as "Nurse Michael Doe," asserting that the true identity of the individual responsible for the conduct at issue was withheld. (*Id.*)

[2]Gardner responded (ECF No. 13) and Naphcare replied (ECF No. 14).

of Gardner's claims. However, the Court will reject the R&R's recommendation to dismiss Plaintiff's professional negligence claims and will allow those claims to proceed.

## II. DISCUSSION[3]

Plaintiff's claims arise from an incident in July 2022, when Gardner alleges that Naphcare's contracted medical providers at WCDF administered hydrogen peroxide instead of saline solution for his scleral contact lenses, leading to significant eye damage, continuing pain and worsening vision. (ECF No. 1.) Because there was no objection to the R&R, the Court is not required to conduct de novo review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1116 (9th Cir. 2003) ("De novo review of the magistrate judges' findings and recommendations is required if, but *only* if, one or both parties file objections to the findings and recommendations.") (emphasis in original). Nevertheless, the Court will consider the recommendations in the R&R as to each of Naphcare's arguments for dismissal. *See* 28 U.S.C. § 636(b)(1) (providing that a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge").

Judge Baldwin first recommends that the Court dismiss Plaintiff's general negligence claim because the claim sounds entirely in professional negligence. (ECF No. 21 at 5.) The Court agrees that, because the negligence alleged involves healthcare providers rendering services—and given that Gardner does not otherwise address Naphcare's argument on this point—dismissal of the general negligence claim is appropriate. *See Limprasert v. PAM Specialty Hosp. of Las Vegas LLC*, 550 P.3d 825, 831 (Nev. 2024).

Judge Baldwin next recommends that the Court dismiss Gardner's professional negligence and negligent supervision claims as time-barred by the one-year statute of limitations in medical malpractice actions. (ECF No. 21 at 5-7.) *See* NRS § 41A.097(2) ("[A]n action for injury or death against a provider of health care may not be commenced

---

[3]The Court incorporates by reference Judge Baldwin's description of the pertinent procedural and factual background provided in the R&R and adopts this background to the extent it is consistent with the Court's findings in this order.

more than 3 years after the date of the injury or 1 year after the plaintiff discovers or through use of reasonable diligence should have discovered the injury, whichever occurs first."); *Yafchak v. S. Las Vegas Med. Invs.,LLC*, 519 P.3d 37, 40 (Nev. 2022) (providing that when the underlying tortfeasor is liable for professional negligence, NRS § 41A applies to negligent hiring, training, and supervision claims). Here, the incident leading to Plaintiff's eye injuries occurred in July 2022, and the Complaint was filed nearly two years later, in June 2024. Gardner argues, however, that the one-year limitation period should be tolled because he repeatedly requested his medical records in and after August 2022, and Naphcare intentionally withheld those records until Gardner's 2024 release from WCDF, knowing that Gardner could attempt to file suit. (ECF No. 13 at 4-8.) *See* NRS § 41A.097(4) (providing that the "time limitation is tolled for any period during which the provider of health care has concealed any act, error or omission upon which the action is based and which is known or through the use of reasonable diligence should have been known to the provider of health care").

Interpreting the allegations in the light most favorable to Plaintiff at the motion to dismiss stage, the Court declines to determine as a matter of law that NRS § 41A.097(4)'s tolling provision does not apply, and accordingly denies Naphcare's Motion with respect to the professional negligence claims. *See Winn v. Sunrise Hosp. & Med. Ctr.*, 277 P.3d 458, 462 (Nev. 2012) (noting that accrual date for the one-year limitation is generally a question of fact, and the Court may determine the date as a matter of law only when the evidence irrefutably shows the date on which a plaintiff was placed on inquiry notice). In order to toll the limitation period, a plaintiff must show that (1) the provider "intentionally withheld information," and (2) "that this withholding would have hindered a reasonably diligent plaintiff from procuring an expert affidavit." *Kushnir v. Eighth Jud. Dist. Ct.*, 495 P.3d 137, 139 (Nev. Ct. App. 2021) (citing *Winn*, 277 P.3d at 464). Gardner asserts that because WCDF and Naphcare prevented him from accessing his medical records for more than a year, he could not identify the specific providers who mistakenly gave him hydrogen peroxide, nor confirm the exact substance involved or the mechanism of the

3

1  injury in order to decide how to pursue legal action. (ECF Nos. 1 at 8-9; 13 at 2, 4-8; 13-
2  1.) Naphcare does not appear to argue there was a justification for refusing to provide the
3  records, or to assert that any withholding was unintentional. (ECF Nos. 8, 14.) And while
4  it is true that the immediate nature of Gardner's injury may make the alleged negligence
5  at issue here more easily discernable to a layperson than in cases involving other kinds
6  of medical injuries, the Court finds that Gardner has plausibly supported that lack of
7  access to *any* documented medical details about the incident could hinder a reasonably
8  diligent plaintiff's ability to obtain an expert affidavit. *See Kushnir*, 495 P.3d (holding that
9  the one-year statute of limitations period began to run against a physician who caused a
10 colon perforation during a diagnostic procedure when an expert received the patient's
11 complete medical records necessary to produce expert affidavit); *Winn*, 277 P.3d at 462-
12 64 (noting that a plaintiff must establish that they acted with "reasonable diligence" to
13 discover the alleged negligence).

14    Naphcare argues, in effect, that Gardner should have filed a complaint without his
15 medical records and simply moved to amend later. The Court finds this argument
16 insufficient to justify dismissal, particularly given that a premature dismissal could allow
17 Defendants to unfairly benefit from improper conduct. As Gardner notes, without medical
18 records, he would have had to choose blindly between pursuing a claim under Nevada's
19 *res ipsa* provision, which sets a rebuttable presumption of negligence under certain
20 circumstances, or bringing a claim requiring an expert affidavit without the benefit of the
21 rebuttable presumption. *See* NRS § 41A.100(1)(c); NRS § 41A.100(3). While the date of
22 inquiry notice does not depend on identification of all conceivable legal theories, discovery
23 of a *legal* injury generally means discovery of, at minimum, all facts supporting the
24 elements of a claim—that is, discovery of "both the fact of damage suffered and the
25 realization that the cause was the health care provider's negligence." *Siragusa v. Brown*,
26 971 P.2d 801, 807 (Nev. 1998) (quoting *Massey v. Litton*, 669 P.2d 248, 251 (Nev. 1983)).
27 *See also Winn*, 277 P.3d at 464 (citing Restatement (Second) of Torts § 538(2)(a) (1977))
28 (noting that a concealed matter is "material" if "a reasonable man would attach importance

to its existence or nonexistence in determining his choice of action"). In addition, concealment of the identity of a tortfeasor may delay accrual of a discovery-based statute of limitations when a plaintiff exercises due diligence in ascertaining the identity through other means, see *Siragusa*, 971 P.2d at 807 (1998), and it is not apparent here to what extent Gardner attempted to ascertain relevant information in spite of the alleged concealment. Finally, although Gardner does not address this point in his opposition, his Complaint alleges professional negligence "[d]uring the course of treatment," and includes numerous factual allegations going to Defendants' failure to adequately respond to his eye injury or provide follow-up care in the months and years after the June 2022 incident, causing additional damage. (ECF No. 1 at 4-8, 13-14.) This further complicates a determination of the date on which a legal injury accrued. In short, the Court finds it would be premature to conclude that Plaintiff's professional negligence claims against Naphcare are time-barred, and accordingly rejects the R&R's recommendation for dismissal of these claims.[4]

Judge Baldwin next recommends that the Court deny Naphcare's Motion with respect to Plaintiff's municipal liability and ADA claims. (ECF No. 21 at 8-9.) The Court adopts these recommendations. As to Plaintiff's Eighth Amendment municipal liability claim, Gardner adequately alleges that as an a WCDF contractor, Naphcare's "policy or custom was to prohibit inmates from receiving medical equipment or modalities [such as eye patches, without considering objective factors]." (ECF No. 1 at 17.) *See also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). As to Plaintiff's ADA disability discrimination claim, the Court finds that Naphcare is a proper defendant under Title II as a result of its status as a private entity contracting with Washoe County. *See Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir.1997) (quoting 42 U.S.C. § 12131(1)) ("The ADA broadly "defines

---

[4]The Court notes that Naphcare's alleged concealment alone may not toll the statute of limitations as to individual medical care providers, because tolling is appropriate only with regard to a defendant who participates in the alleged problematic conduct. *See Winn*, 277 P.3d at 464. However, because none of the individual defendants have been served, the Court will not address the claims against them in this order.

'public entity' as 'any State or local government [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government.'"). Accordingly, the Court will adopt the R&R and allow these claims to proceed.

Finally, the Court adopts Judge Baldwin's recommendation to dismiss Defendants Michael Buehler and Michael Tover, because Gardner states he has confirmed the true identity of "Nurse Michael Doe" as Michael Trebian and has therefore agreed to dismiss the two other "Michaels" originally named in the Complaint. (ECF Nos. 13 at 6 n. 3; 21 at 9.)

### III.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome here.

It is therefore ordered that Judge Baldwin's Report and Recommendation (ECF No. 21) is adopted in part and rejected in part. The R&R is rejected as to the recommendations to dismiss Plaintiff's claims for negligent training, supervision, and retention (claim two) and professional negligence (claim three) and adopted as to all other recommendations.

It is further ordered that Naphcare's Motion to Dismiss (ECF No. 8) is granted in part and denied in part as specified in this order. The Motion is granted as to Plaintiff's general negligence claim (claim one). The Motion is denied as to all other claims. Plaintiff may proceed with his claims for negligent hiring, training, supervision and retention (claim two), professional negligence (claim three), municipal liability under the U.S. and Nevada Constitutions (claim four) and ADA discrimination (claim five).

It is further ordered that Defendants Michael Buehler and Michael Tover are dismissed from this action with prejudice.

DATED THIS 21st Day of November 2024.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE